UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ROBERT K. DOWD** § § **Plaintiff** § § v. § § **THE TOWN OF YARMOUTH** § § **Defendant** § | **CAUSE NO. _____** |

## COMPLAINT

**COMES NOW**, Robert K. Dowd, ("Plaintiff' and or "Dowd") and respectfully files this complaint complaining against the Town of Yarmouth ("Defendant") and in particular the Town of Yarmouth Water Department and sets forth the following:

### I.

### PARTIES

1. Plaintiff is a resident of Dallas County, Dallas, Texas, and may be served at his office located at 2929 Carlisle Street, Suite 115, Dallas, Texas 75204.

2. Defendant is a local government agency which controls the water supply to the secondary residence of Plaintiff at 229A Old Main Street, South Yarmouth, Massachusetts 02664.

### II.

### THE COURT HAS DIVERSITY JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). The Parties Are Completely Diverse under 28 U.S.C. § 1332(a).

Complaint - Page 1

4. Complete diversity of citizenship exists between Plaintiff and the Town of Yarmouth.

5. For the purposes of diversity jurisdiction, "the state where someone establishes his domicile serves a dual function as his state of citizenship," and the "state of domicile presumptively continues unless rebutted with sufficient evidence change." See *Preston v. Tenet Healthsystem Mem. Med. Ctr*, 485 F.3d 793, 797-98 (5th Cir. 2007).  A corporation is a citizen of the state where it is incorporated and where its principal place of business is located.  See *Hoagland ex rel. Midwest Transit, Inc. v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F3d. 737, 739 (7th Cir. 2004) (holding that a professional corporation is treated as any other corporation for diversity purposes); *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1183 (9th Cir. 2004) (explaining that, regardless of the P.C.'s "individual structure, purpose, operations, or name," its citizenship is determined by reference to the general test for corporations).

6. Plaintiff is a Texas resident at 5246 Farquhar Lane, Dallas, Texas 75209.

7. Defendant Town of Yarmouth Water Department has its main office at Buck Island Road, Yarmouth Massachusetts  02664.

8. Accordingly, there is complete diversity between Plaintiff and Defendant under 28 U.S.C. § 1332(a).

**III.**

**THE AMOUNT IN CONTROVERSY EXCEEDS THE STATUTORY MINIMUM.**

9. Diversity jurisdiction exists where a Plaintiff establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000.00.

**Complaint - Page 2**

See Garcia v. Koch Oil Co. of Tex., Inc. 351 F.3d 636, 638-39 (5th Cir. 2003).

## IV.

## FACTUAL BACKGROUND

10. Plaintiff is a General Counsel of a solar energy company which has either installed or worked on the solar arrays from Eastham to Duxbury, Massachusetts. The primary legal office of Plaintiff and his primary residence is in Dallas Texas. Plaintiff maintains a secondary home in South Yarmouth, Massachusetts at 229 Old Main Street. This property, in the years 2010 through the present, serves as secondary residence and Plaintiff's Massachusetts Office. As Outside General Counsel to the Massachusetts Solar Energy Company which built landfill solar arrays from Eastham to Duxbury, the 229 Old Main Street property consists of the main house and the carriage house both of which are registered as "National Historic Properties".

11. During periods in which Plaintiff primarily resides and offices in Dallas, Texas, Plaintiff's assistant, Liz Hofstetter, assists with legal matters, general matters, property management and bookkeeper for both his business and personal property entities.

12. In 2019, while Plaintiff was caring for his wife, the water meter installed by the Town of Yarmouth burst causing thousands of gallons of water to leak into the basement of the Plaintiff's house/office. The house had been secured in 2018 by shutting off the gas and the water at the meter as new A/C and heating system was worked on and new sink and toilet along with new kitchen sink were to be replaced at the carriage house.

13. In 2019, as a result of Plaintiff's wife's cancer, instead of intermittent monthly residency at 229 Old Main Street, Plaintiff was away from the property from January to May of 2019. During that period Plaintiff secured an individual to check weekly on the condition of the main house and the carriage house. However, as a result of the carriage house half cellar only accessible from the outside bulkhead with no railing and precarious stairs, the incapacitated gentlemen checking on the property could not enter the half basement where the water meter leaked causing the stone foundation of the 150 year old carriage house to collapse onto to the main water line. Plaintiff's assistant to insure additional safeguard to the carriage house was directed to contact the Yarmouth Water Department monthly to determine water consumption on the carriage house to ensure that there were no leaks.

14. In 2019, Plaintiff's assistant contacted the Yarmouth Water Department at least monthly as instructed to obtain the water consumption for both accounts, #02-002110 and #02-012399.

15. Following Plaintiff's instructions his assistant contacted the Town of Yarmouth Water Department each month, wherein she was advised that there was no noticeable change in consumption. In May, upon Plaintiff's return to the Cape, Plaintiff discovered the leak and it was then determined that the water meter had broken had poured water onto the sand and stone 150 year old foundation which collapsed onto the main water line thereby resulting in thousands of gallons of water leaking into the foundation. The result was thousands of gallons of water flowed into the carriage house basement. The water destroyed the furniture and items stored in the half cellar, partially

Complaint - Page 4

destroyed the foundation from the liquidation of the sandy soil, destroyed the heating and air conditioning system and the tankless water heater. Further, the water damage destroyed the duct work and the resulting mold caused additional damages all of which exceeds $75,000.00.

16. If at any time the Defendant had reported the correct amount of water consumption especially the thousands of gallons of water flowing into the basement, the damage would not have occurred to the extent that it did, in that immediate action would have been taken by a plumber to stop the leak. The very day that the discovery of the leak occurred, the leak was stopped, however, as a result of the negligence of the Defendant, the damage was done.

17. Further, the Defendant was negligent in not replacing an old meter which they knew or should have known was about to leak and negligent in the location of installation of the water heater at the base of a 150 year old sand and stone foundation.

18. On each occasion that calls were made to the Defendant, the Defendant representative was advised that there was only normal water usage on accounts #02-002110 and #02-012399.

V.

## CAUSE OF ACTION

### NEGLIGENCE

19. The Defendant was negligent in both the location and the defective meter that was installed next to a 150 year old stone foundation, which sprayed a stream of water into the stone foundation causing the foundation to collapse onto the main water

**Complaint - Page 5**

pipe into the house which then poured thousands of gallons of water into the basement which in turn caused over $75,000.00 worth of damage to the carriage house destroying the heating system, the air conditioning system, the foundation from liquidation of the sandy soil, the tankless water heater, the duct work and insulation plus mold removal and repair to the carriage house.

## VI.

## SPOLIATION OF EVIDENCE

20. The Plaintiff repeats and re-alleges all of the allegations contained in Paragraphs 1 through 19, as if specifically set forth herein. The Plaintiff upon discovery of the water damage immediately contacted the Defendant who came and removed the meter and replaced it.

21. In addition, despite Plaintiff's requests to view the water meter that was removed and notice of cause of action by letter dated August 14th, 2019, and on information and belief the water meter has been discarded by the Defendant and is not available for inspection to establish the age and defective nature of the water meter. Accordingly, negligence is presumed as a result of destruction of evidence by the Defendant.

22. Demand is made for damages in excess of $75,000.00 for repair of the liquified sandy soil, destruction of furniture and personal effects destroyed by the water, destruction of the tankless water heater, damages caused to the heating system and air conditioning system and the ductwork used by the systems and damages caused by resulting mold and clean up.

## VII.

### BREACH OF CONTRACT

26. Plaintiff realleges paragraphs 1 through 25, Plaintiff had a contractual agreement with the City of Yarmouth to supply water, supply a Non defective water meter and supply water, all of which was breached by the Defendant in its installation and failure to report the use of water at the 229 Old main Street location for which Plaintiff seeks damages in excess of $75,000.

### IX

### PRAYER

**WHEREFORE**, the Plaintiff seeks judgment as follows:

A. That judgment issue for the Plaintiff in the amount in excess of $75,000.00 plus attorney fees in the amount of $10,000.

B. That judgment issue for the Plaintiff for attorneys' fees in connection with Breach of Contract and Negligence with regard to the Plaintiff.

C. That judgment issue for the Plaintiff for whatever other relief the Court deems necessary and just.

THE PLAINTIFF DEMANDS TRIAL BY JURY.

Respectfully submitted,

ROBERT K. DOWD, P.C.
2929 Carlisle Street, Suite 115
Dallas, Texas 75204
Telephone (214) 922-9330
E-mail: robert@robtdowd.com

BY:    /s/Robert K Dowd
       Robert K Dowd
       State Bar No. 132800

ATTORNEY FOR PLAINTIFF

**Complaint - Page 8**